Virgil K. Stimer
General Delivery
Tucson Arizona 85726

FILED_____ LODGED____
RECEIVED____ COPY

2   JAN 10 2012   2

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

VIRGIL K STIMER;                    )
                                    )
          Plaintiff,                )
                                    )
   vs.                              )  CIV 12-21 TUC CKJ
                                    )
UNITED COLLECTION BUREAU INC;       )  **COMPLAINT**
                                    )
          Defendant                 )

**JURISDICTION**

1.   Plaintiff is resident of the State of Arizona.

2.   Defendant is a corporation incorporated under the laws
of the State of Ohio with its principal place of business in
Toledo Ohio.

3.   Under 15 U.S.C. § 1692k.(d) (Fair Debt Collection
Practices Act, hereinafter referred to as, "FDCPA"), this
action may be brought in any appropriate United States district
court without regard to the amount in controversy, within one
year from the date on which the violation occurred.

4.   This Court has jurisdiction.

**COMPLAINT**

5.    This action is for money damages as the result of violations by Defendant of the FDCPA Title 15 U.S.C. § 1692.

**General Factual Allegations**

6.    Defendant is a debt collector.

7.    On December 10th, 2010, Defendant sent Plaintiff a debt collection letter in care of Track Products, P.O. Box 1607, St. Johns Arizona, 85936. (see exhibit A, pg. 1)

8.    The said debt collection letter is in regard to an alleged debt against Plaintiff by some department of the State of Ohio. (see exhibit A, pg. 1)

9.    The alleged debt is for the years 2004 and 2005. (see exhibit A, pg. 3)

10.  Plaintiff did not live in the State of Ohio during the years 2004 and 2005. (see exhibit B)

11.  Track Products is an uninterested third-party in regard to the debts alleged against Plaintiff by some department of the State of Ohio.

12.  Defendant did not receive prior consent from Plaintiff to contact Track Products in regard to collecting an alleged debt from Plaintiff.

13.  The said debt collection letter stated that Defendant is an authorized representative of the Ohio Attorney General. (see exhibit A, pg. 1)

14.  Defendant is not an authorized representative of the Ohio Attorney General.

15.  Defendant is a Consultant employed as an independent contractor to the Ohio Attorney General. (see exhibit C, pg. 1 Section I, D)

16.  Defendant fully understands that it is not an agent of the Attorney General or the State of Ohio. (see exhibit C, pg. 2, section I, part G.)

17.  Defendant falsely represented itself as an agent of the Ohio Attorney General by stating it was an authorized representative of the Ohio Attorney General. ( see exhibit A, ¶ 1)

18.  On January 10, a document styled, SWORN NOTICE AND AFFIDAVIT FORM VKS-12272010, (herein after referred to as "Sworn Notice") was delivered to Defendant.

19.  The Sworn Notice was delivered to Defendant by United States Postal Service Registered Mail # RR 743 610 462 US. (see exhibit D)

20.  The Sworn Notice is from Plaintiff and is signed by Plaintiff.

21.   The Sworn Notice is dated December 27, 2010.

22.   The Sworn Notice required, among other things, that Defendant validate the alleged debt claimed against Plaintiff.

23.   The Sworn Notice required, among other things, that Defendant respond to Plaintiff within 21 days of Defendant's receipt of the Sworn Notice.

24.   Plaintiff's Sworn Notice stated, among other things, that a lack of a response or an improper response by Defendant to the Sworn Notice would result in Defendant's agreement with all statements, law and conclusions of laws made by Plaintiff in the Sworn Notice

25. On or about January 15, 2011, Defendant sent Plaintiff a second debt collection letter. (see exhibit E)

26.   The second debt collection letter is dated January 15, 2011. (see exhibit E, pg. 1)

27.   The said second debt collection letter claimed that Defendant is an authorized representative of the Ohio Attorney General. (see exhibit E, pg. 1)

28.   The said second debt collection letter did not fulfill any of the requirements of a response to Plaintiff according to the Sworn Notice.

29.   On January, 31, 2011, a document styled as, "NOTICE OF FAULT AND DISHONOR UCBLT50" (hereinafter referred to as, "Notice of Fault") was delivered to Defendant.

30.   The Notice of Fault was delivered by United States Registered Mail # RR 743 610 459 US. (see exhibit F)

31.   The Notice of Fault is dated January 22, 2011.

32.   The Notice of Fault is signed by Plaintiff and is from Plaintiff.

33.   The Notice of Fault extended to Defendant, ten more days for Defendant to properly respond to Plaintiff's Sworn Notice.

34.   Plaintiff received no response from Defendant to Plaintiff's Notice of Fault.

35.   On about February 23, 2011, a document styled as, "NOTICE OF FAULT AND DISHONOR CONSENT TO JUDGMENT", (here in after referred to as, "Notice of Default") was delivered to Defendant.

36.   The Notice of Default was sent by United States Postal Service Registered Mail # RR 743 610 493 US. (see exhibit G)

37.   The Notice of Default notified Defendant of its' default to Plaintiff's Sworn Notice.

38.   The Notice of Default is signed by Plaintiff and is from Plaintiff.

39.  The Notice of Default is dated February 10, 2011.

40.  The Notice of Default notified Defendant, among other things, of its' consent to judgment in this matter.

41.  Both debt collection letters sent by Defendant used the Ohio Attorney General Post Office box address as a return address for Defendant's debt collection envelope. (see exhibit H)

42.  All documents of Plaintiff were sent to Defendant by a notary public. (see exhibit I)

43.  The said notary public does certify that Defendant is in default to Plaintiff's Sworn Notice. (see exhibit I)

### COUNT ONE, FDCPA VIOLATION

### FALSE OR MISLEADING REPRESENTATIONS

44.  Plaintiff realleges and restates the foregoing jurisdictional statements and general factual allegations of numbered paragraphs 1 through 43.

45.  Defendant's claim of being an authorized representative is on Defendant's second debt collection letter dated January 15, 2011 is in violation of **Title 15 § 1692e. False or misleading representations.**

46.  The action for this violation is within one year of the date of which the violation occurred.

6

47.   Defendant has tacitly agreed to its' liability for this count by its' acquiescence through default to Plaintiff's Sworn Notice.

### COUNT TWO FDCPA VIOLATION, UNFAIR PRACTICES

48.   Plaintiff realleges and restates the foregoing jurisdictional statements and general factual allegations of numbered paragraphs 1 through 43.

49.   Defendant violated Title 15 U.S.C. § 1692f., (Unfair Practices) by using the Ohio Attorney General's address and Post Office box as the return address for the envelope of the debt collection letter.

50.   Defendant has tacitly agreed to its' liability for this count by its' acquiescence through default to Plaintiff's Sworn Notice.

### COUNT THREE, FDCPA VIOLATION, COMMUNICATION WITH THIRD PARTIES

51.   Plaintiff realleges and restates the foregoing jurisdictional statements and general factual allegations of numbered paragraphs 1 through 43.

52.   Defendant violated Title 15 U.S.C. §1692c (b) Communication with third-parties without prior consent of Plaintiff.

7

53.   Defendant has tacitly agreed to its' liability for this count by its' acquiescence through default to Plaintiff's Sworn Notice.

### DAMAGES OF PLAINTIFF

54.   Plaintiff claims **$3000.00** for pain and suffering as the result of the stress and anxiety of Plaintiff experienced believing that the power of the office of the Ohio Attorney General was going to garnish wages and seize property.

55.   **$6050.00** for the time of approximately 242 hours, ($25.00 per hour) from December of 2010 to the present day that it has taken to do the research needed to learn the legal process and the time to prepare documents without the benefit of an attorney.

56. Notary mailing service, **$120.00,**

57. Registered Mail, **$36.00,**

58. Legal educational materials **$250.00,**

59. Court filing fee, **$350.00**

60.   Total of **actual damages** of Plaintiff amounts to **$9806.00** pursuant to Title 15 U.S.C.§ 1692k(1) and **additional damages** **$3000**,   (not more than $1000 for each violation of Title 15 § 1692 pursuant to Title 15 U.S.C.§ 1692k(2)).

61.   **WHEREFORE** Plaintiff demands a judgment for money damages of **$12,806.00** against Defendant together with such

other and further relief to the Plaintiff as the Court may deem reasonable.

Dated: _JANUARY 10, 2012_  _Virgil K. Stimer_

Virgil K Stimer
General Delivery
Tucson Arizona 85756

9

## TABLE OF CONTENTS FOR EXHIBITS

Exhibit A --------debt collection letter dated December 10, 2010

Exhibit B-------- W-2 forms for the years 2004 and 2005

Exhibit C---------Consultant Agreement between UCB and Ohio
                  Attorney General

Exhibit D---------USPS Track and Confirm for RR74361462US
                  registered mail

Exhibit E---------debt collection letter dated January 15, 2011

Exhibit F---------USPS Track and Confirm for RR74361459US
                  registered mail

Exhibit G---------USPS Track and Confirm for RR74361493US
                  registered mail

Exhibit H---------UCB's mailing envelope with Ohio Attorney
                  General's return address used

Exhibit I---------Notary certification of default

**EXHIBIT A**



United Collection Bureau, Inc.

United Collection Bureau, Inc.
PO Box 165009
Columbus, OH 43216-5009

Telephone: (614) 447-2730
              (800) 320-7199
Facsimile:  (614) 263-7450

Virgil K Stimer
C/o Track Products
PO Box 1607
Saint Johns AZ 85936-1607

| | |
|---|---|
| Date: | December 10, 2010 |
| Account No: | 8522235 |
| Taxpayer ID: | XXX-XX-9694 |
| CRN No: | 02200915513693 |
| Amount Due: | $11,969.54 (see enclosure for detail) |

Your delinquent tax account is now being handled by United Collection Bureau, Inc., an authorized representative of the Ohio Attorney General. It is necessary that you contact UCB at 1-800-320-7199 to make arrangements to pay your account.

Please remit balance in full as a cashier's check or money order payable to Ohio Treasurer of State and mail to Office of the Attorney General, PO Box 165009, Columbus, OH 43216-5009. Please include your account number on the front of your payment.
Payments may also be made on the Internet at
http://www.ag.state.oh.us/business/pay.asp
or https://ohag.govconnect.com

Failure to pay this obligation may result in further legal action being taken against you which may include a tax lien if one has not already been placed.

This is an attempt to collect a debt by UCB, Inc., a debt collector, and any information obtained will be used for that purpose.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Sincerely,

*Vickie Thompson*

Manager
United Collection Bureau, Inc.

Attachment

**SEE REVERSE SIDE FOR IMPORTANT INFORMATION**

44RQ075U01UCBLT40

**PLEASE RETURN THIS PORTION WITH PAYMENT. DO NOT ATTACH CHECK TO STUB. PLEASE INCLUDE YOUR ACCOUNT NUMBER ON THE FRONT OF YOUR PAYMENT.**

| | |
|---|---|
| Account No: | 8522235 |
| Taxpayer ID: | XXX-XX-9694 |
| CRN No: | 02200915513693 |
| Amount Due: | $11,969.54 (see enclosure for detail) |

STATE OF OHIO
OFFICE OF THE ATTORNEY GENERAL
PO BOX 165009
COLUMBUS OH 43216-5009
ADDRESS SERVICE REQUESTED

☐ Please check box if address shown is incorrect or has changed, and indicate change(s) on reverse side.

**REMIT TO:**

State of Ohio Office of the Attorney General
**Payable to: Ohio Treasurer of State**
PO Box 165009
Columbus OH 43216-5009

8522235-UCBLT40    444703867

Virgil K Stimer
C/o Track Products
PO Box 1607
Saint Johns AZ 85936-1607

**CALIFORNIA**: As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit-reporting agency if you fail to fulfill the terms of your credit obligations. But we will not submit a negative credit report to a credit reporting agency about this credit obligation until the expiration of the time period described in the notice on the front of this letter.

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov. Nonprofit credit counseling services may be available in the area.

**COLORADO**: FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA. A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt.

**IDAHO**: Toll Free 800-866-6228.

**MAINE**: Hours of Operation (EST): Monday through Thursday, 8:00 a.m. to 8:00 p.m.; Friday 8:00 a.m. to 5:00 p.m.; Saturday 8:00 a.m. to 12:00 p.m.

**MASSACHUSETTS**: **\*\*NOTICE OF IMPORTANT RIGHTS\*\*** You have the right to make a written or oral request that telephone calls regarding your debt not be made to you at your place of employment. Any such oral request will be valid for only ten days unless you provide written confirmation of the request postmarked or delivered within seven days of such request. You may terminate this request by writing to the debt collector. Hours of Operation (EST): Monday through Thursday, 8:00 a.m. to 8:00 p.m.; Friday 8:00 a.m. to 5:00 p.m.; Saturday 8:00 a.m. to 12:00 p.m.

**MINNESOTA**: This collection agency is licensed by the Minnesota Department of Commerce.

**NEW YORK CITY**: New York City Department of Consumer Affairs License Number 1004887

**NORTH CAROLINA**: North Carolina Permit Numbers: 3422, 3843 and 4022

**TENNESSEE**: This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance.

**UTAH**: As required by Utah law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit-reporting agency if you fail to fulfill the terms of your credit obligations. But we will not submit a negative credit report to a credit reporting agency about this credit obligation until the expiration of the time period described in the notice on the front of this letter.

**WISCONSIN**: This collection agency is licensed by the Division of Banking, P.O. Box 7876, Madison, Wisconsin 53707.

**IF ANY OF THE FOLLOWING HAS CHANGED, PLEASE INDICATE BELOW.**

Your Name _____   Marital Status _____

Street _____   Home Phone _____

City _____   State _____   Zip _____

Employer _____   Business Phone _____

Employer Address _____

ATTACHMENT TO UCBLT40    TAX INFORMATION   12-07-2010

TAXPAYER ID#    XXX-XX-9694

| AG ACCOUNT# | ASSESSMENT# | BALANCE | ASSESSMENT PERIOD |
|---|---|---|---|
| 8522235 | 02200915513693 | 4,999.11 | 2004 |
| 8522234 | 02200915513692 | 6,970.43 | 2005 |
| TOTAL AMOUNT DUE: | | 11,969.54 | |

**EXHIBIT B**

## 2004 W-2 and EARNINGS SUMMARY



International Business Machines Corporation

The wages, tips, and other compensation reflected in box 1 are the sum of those wages shown on your last pay statement for 2004 plus any additional 2004 compensation or adjustment received after the 12/20/04 payroll close.

For other tax and payroll information, visit the Employee Disbursements Web Site at http://w3.ibm.com/hr on the IBM Intranet

VIRGIL K STIMER
GENERAL DELIVERY
TUCSON, AZ   85726

Social Security Number:   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
Taxable Marital Status:
   SINGLE
Exemptions/Allowances:
   Federal: 0
   State: 0
   Local: 0

© 2002 AUTOMATIC DATA PROCESSING, INC.

← Fold and Detach Here →

---

## W-2 Wage and Tax Statement   2004

OMB No. 1545-0008

Safe, accurate,
FAST! Use **e~file**

Visit the IRS Web Site at www.irs.gov.

W-2 Employee Reference Copy

Copy for employee's records.

| Box | Field | Amount |
|---|---|---|
| 1 | Wages, tips, other comp. | 28042.23 |
| 2 | Federal income tax withheld | 4663.60 |
| 3 | Social security wages | 28042.23 |
| 4 | Social security tax withheld | 1738.62 |
| 5 | Medicare wages and tips | 28042.23 |
| 6 | Medicare tax withheld | 406.61 |
| c | Control number  00697391 W11 | Dept. | Corp. IB01 | Employer use only  151759 Z |
| b | Employer's FED ID number  10-0871985 | d | Employer's SSA number |
| 7 | Social security tips | 8 Allocated tips |
| 9 | Advance EIC payment | 10 Dependent care benefits |
| 11 | Nonqualified plans | 12a See instructions for box 12  C  55.20 |

Employer's name, address, and ZIP code

INTERNATIONAL BUSINESS MACHINES
CORPORATION
1701 NORTH ST
ENDICOTT, NY 13760-5553
BLDG 14-2

| 13 | Stat emp, Ret plan, 3rd prty sick pay  X |
| 12b | |
| 12c | |
| 12d | |

Employee's name, address and ZIP code

VIRGIL K STIMER
GENERAL DELIVERY
TUCSON, AZ   85726

| 15 State | Employer's state ID no. | 16 State wages, tips, etc. |
| 17 State income tax | 13-0871985 | 28042.23 |
|  | 993.33 |  |
| 18 Local wages, tips, etc. |
| 19 Local income tax |
| 20 Locality name |

This information is being furnished to the Internal Revenue Service. If you are required to file a tax return, a
negligence penalty or other sanction may be imposed on you if this income is taxable and you fail to report it.

0000580-210

| | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|---|
| OMB No. 1545-0008 | 52318.40 | 4888.07 |
| | 3 Social security wages  52318.40 | 4 Social security tax withheld  3243.74 |
| | 5 Medicare wages and tips  52318.40 | 6 Medicare tax withheld  758.62 |

c Employer's name, address, and ZIP code

SUPERIOR DESIGN INTERNATIONAL,
INC,
6365 NW 6TH WAY SUITE #360
FORT LAUDERDALE, FL 33309-6162

| 7 Social security tips  .00 | 8 Allocated tips  .00 | 9 Advance EIC payment  .00 |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans  .00 | 12a See instructions for box 12 |
| 12b | 12c | 12d |

b Employer identification number (EIN)
650351353

d Employee's social security number

| 13 Statutory employee | Retirement plan | Third-party sick pay | 14 Other |
|---|---|---|---|

e Employee's name, address, and ZIP code

VIRGIL K STIMER
8701 S KOLB RD #18-223
TUCSON AZ  85706

Form **W-2**

Wage and Tax Statement

**2005**

| 15 State  Employer's state ID number | 16 State wages, tips, etc. |
|---|---|
| AZ 07-508726J | 52318.40 |
| 17 State income tax  488.68 | 18 Local wages, tips, etc. |
| 19 Local income tax | 20 Locality name |

Copy C For EMPLOYEE'S RECORDS. (See Notice to Employee on back of Copy B).

Department of the Treasury—Internal Revenue Service

**EXHIBIT C**

**DEBT COLLECTION CONSULTANT AGREEMENT**
**BETWEEN THE**
**OHIO ATTORNEY GENERAL**
**AND**
**UNITED COLLECTION BUREAU, INC.**

THIS AGREEMENT is between the Ohio Attorney General (hereinafter "Attorney General"), located at 30 East Broad Street, 17th Floor, Columbus, Ohio 43215-3400, and United Collection Bureau, Inc. (hereinafter "Consultant"), located at 5620 Southwyck Boulevard, Toledo, OH 43614.

The parties agree as follows:

**I.      NATURE OF CONTRACT**

A.  The Attorney General represents the State of Ohio in the recovery of its delinquent debts. The State's delinquent accounts are comprised of all types of debts owed to various state agencies ("Account" or "Accounts"). The scope of the collection work for this contract may include any type of Account owed to the State of Ohio in all eighty-eight (88) Ohio counties and throughout the United States.

B.  Accounts will be assigned to the Consultant at the discretion of the Attorney General. Assignment of Accounts will be made based on Account type (also known as product type). The specific percentage of the Accounts of one or more Account types allocated to the Consultant will be determined at the discretion of the Attorney General. These assignments will be made by the Attorney General in writing, including email, and are subject to change during the course of this Agreement. After an initial assignment of Account type is made, individual Accounts will be electronically assigned to Consultant for collection.  All assignments of Accounts are subject to the terms and conditions of this Agreement.

C.  The Attorney General may recall an Account at any time for any reason. At the time of recall, all collection activity by Consultant shall immediately cease. No reimbursements will be made by the Attorney General in the event of recall. However, Consultant's commission may be paid, at the Attorney General's discretion, on payments received within ten (10) days of the recall. Recalled Accounts may be assigned to another Consultant.

D.  Consultant shall be employed as an independent contractor, to fulfill the terms of this Agreement and to act as a consultant to the Attorney General.  It is specifically understood that the nature of the services to be rendered under this Agreement are of such a personal nature that the Attorney General is the sole judge of the adequacy of such services.

E.  The Attorney General enters into this Agreement in reliance upon Consultant's representations that it has the necessary expertise and experience to perform its obligations hereunder, and Consultant warrants that it does possess the necessary expertise and experience.

F.  Consultant shall perform the services to be rendered under this Agreement and the Attorney General shall not hire, supervise, or pay any assistants to Consultant in its performance of services under this Agreement.  The Attorney General shall not be required to provide any training to Consultant to enable it to perform services required hereunder.

G.  The Attorney General and Consultant agree that Consultant shall be responsible for all of its own business expenses, including, but not limited to, computers, email and internet access,

software, phone service and office space.  Consultant will also be responsible for all licenses, permits, employees' wages and salaries, insurance of every type and description, and all business and personal taxes, including income and Social Security taxes and contributions for Workers' Compensation and Unemployment Compensation coverage, if any.

E.   While Consultant shall be required to render services described hereunder for the Attorney General during the term of this Agreement, nothing herein shall be construed to imply, by reason of Consultant's engagement hereunder as an independent contractor, that the Attorney General shall have or may exercise any right of control over Consultant with regard to the manner or method of Consultant's performance of services hereunder.

F.   Except as expressly provided herein, neither party shall have the right to bind or obligate the other party in any manner without the other party's prior written consent.

G.   It is fully understood and agreed that Consultant is an independent contractor and neither Consultant nor its personnel shall at any time, or for any purpose, be considered as agents, servants, or employees of the Attorney General or the State of Ohio.

## II.   SCOPE OF WORK

A.   Consultant shall perform the services as set forth in this Agreement and in Exhibit A, Scope of Work.

B.   All collectors and call centers performing work under this Agreement must be located in the State of Ohio.

C.   Consultant shall at all times (during and subsequent to the contract period) limit the use of debtor information to the sole purpose of the collection of Accounts by staff who are in a secure area.  The staff members of Consultant who handle these Accounts must be dedicated exclusively to the work under this Agreement, and must be the only staff of Consultant to have access to debtor data and information provided by the Attorney General. Consultant shall make no private use of such information in any manner. Violation of this section may result in the termination of the contract and other legally authorized sanctions by the Attorney General.

## III.   PERFORMANCE STANDARDS AND EVALUATIONS

A.   Consultant shall conduct business in a manner that supports the Attorney General's goal of fair and equitable treatment of debtors during the collection of debts. At a minimum, fair and equitable treatment means debt collection without harassment or verbal abuse of the debtor, or compromising the debtor's rights. The Attorney General expects Consultant to provide services to the public in a manner that will preserve or enhance goodwill between the public and the State of Ohio.

B.   If Consultant substantially increases Consultant's collection rate, while maintaining quality customer service of assigned claims, Consultant may be eligible to have an increase in the number of claims assignments made by the Attorney General. If Consultant does not have a successful collection rate as determined by the Attorney General, the Attorney General may decrease Consultant's assignments or terminate Consultant in accordance with Article XI.

C.   On a quarterly basis, the Attorney General shall conduct a performance review of Consultant, subject to the following terms and conditions:

1.  Performance reviews may include, but are not limited to the following areas: collection ratios, performance measures based on historical averages and comparisons of new and old Accounts and various Account types, customer service complaints, reports, site visits, interaction with the Attorney General, and interviews.

2.  The Attorney General may communicate in writing any additional specific performance review requirements.

3.  As a result of this review, the Consultant's inventory of claims may be increased or decreased, or this Agreement may be terminated, at the sole discretion of the Attorney General.

4.  Consultant will be afforded an opportunity to discuss any significant issues resulting from the quarterly performance reviews with the Attorney General.

D.  Consultant agrees to follow the Code of Ethics and Professional Responsibility promulgated by the American Collectors Association, Inc., which is attached as Exhibit B to this Agreement and incorporated by reference.

E.  The Attorney General has zero tolerance for collection actions or activities that demonstrate anything less than complete respect for the rights and reasonable expectations of the public. Any violation of this provision shall result in termination pursuant to Article VIII.

## IV.  TIME OF PERFORMANCE

A.  The services as stated in Exhibit A, Scope of Work, shall be commenced on October 1, 2009 and concluded on or before June 30, 2010.

B.  This Agreement shall remain in effect until the work described in Exhibit 1, Scope of Work, is completed to the satisfaction of the Attorney General and until Consultant is paid in accordance with Article VII, Compensation, or until terminated as provided in Article VIII, Termination of Consultant's Services, whichever is sooner.

C.  Notwithstanding the foregoing, this Agreement shall expire no later than June 30, 2010. The Attorney General may renew this Agreement for an additional one year term on the same terms and conditions by giving written notice prior to expiration. As the current General Assembly cannot commit a future General Assembly to expenditure, this Agreement and any renewal shall expire no later than June 30, 2011.

D.  It is expressly agreed by the parties that none of the rights, duties, and obligations herein shall be binding on either party if award of this Agreement would be contrary to the terms of Ohio Revised Code ("O.R.C.") Section 3517.13, O.R.C. Section 127.16, or O.R.C. Chapter 102.

## V.  COMPENSATION

A.  Consultant shall be compensated only for the satisfactory performance of services provided as set forth in the Agreement. Consultant shall be compensated only in accordance with the express written provisions of this Agreement and shall not receive reimbursement for expenses incurred in the performance of duties in accordance with the terms of this Agreement.

B.  Consultant will be paid on a contingency fee basis on Accounts assigned to Consultant. The standard contingency fee for any Accounts assigned to Consultant for delinquent debt collection will be twenty-one percent (21%), except for:

    1.  State Funded University Hospital receivables will pay a contingency fee of fourteen percent (14%).

    2.  Federal student loans placed with Consultant on or after July 1, 2008 will pay a contingency fee of eighteen percent (18%).

    3.  Consultant will receive a zero percent (0%) fee on any account balances offset by the State or IRS via any tax offset program.

C.  The Attorney General reserves the right to modify the standard contingency fee on Accounts assigned to Consultant by notifying Consultant in writing of any change.

D.  The Attorney General will determine the payment method and schedule for compensation distributed to Consultant.

E.  Consultant shall not be reimbursed for travel, lodging or any other expenses incurred in the performance of this Agreement.

## VI.  FIDELITY BOND

A.  Consultant shall maintain a fidelity bond in the amount of one million dollars for the duration of the Agreement. Such bond shall serve to protect the Attorney General against any loss through failure of Consultant, its Subcontractors, agents, or employees to perform in accordance with the terms and conditions of the contract, for any acts of theft, embezzlement, and/or lost funds, malfeasance, misfeasance, gross negligence and similar misconduct committed by Consultant, its employees or agents, and/or to reimburse the Attorney General for services performed in the event of default by Consultant. If Consultant forwards any collection Accounts to any other party for support services, such party must be covered by the original Consultant's bond. All bonds must be executed by a company authorized to do business in the State of Ohio. A copy of the bond must be furnished with receipts or other satisfactory evidence establishing the payment of premiums at the time of execution of this Agreement.

## VII.  CERTIFICATION OF FUNDS

A.  It is expressly understood and agreed by the parties that none of the rights, duties, and obligations described in this Agreement shall be binding on either party until all relevant statutory provisions of the Ohio Revised Code, including, but not limited to, O.R.C. Section 126.07, have been complied with, and until such time as all necessary funds are available or encumbered and, when required, such expenditure of funds is approved by the Controlling Board of the State of Ohio, or in the event that grant funds are used, until such time that the Attorney General gives Consultant written notice that such funds have been made available to the Attorney General by the Attorney General's funding source.

## VIII.  TERMINATION OF CONSULTANT'S SERVICES

A.  The Attorney General may, at any time prior to the completion of services by Consultant under this Agreement, suspend or terminate this Agreement with or without cause by giving

written notice to Consultant. The Attorney General may terminate the contract for its convenience or any reason including, but not limited to (1) default by Consultant; (2) the lack of need for the services as specified under this Agreement; or (3) if the Attorney General deems termination to be in the best interest of the State. Default is defined as the failure by Consultant to specifically perform in accordance with the specifications, terms, and conditions of this Agreement.

B.   Consultant, upon receipt of notice of suspension or termination, shall cease work on the suspended or terminated activities under this Agreement, suspend or terminate all subcontracts relating to the suspended or terminated activities, take all necessary or appropriate steps to limit disbursements and minimize costs, and, if requested by the Attorney General, furnish a report, as of the date of receipt of notice of suspension or termination, describing the status of all work under this Agreement, including, without limitation, results, conclusions resulting there from, and any other matters the Attorney General requires.

C.   Consultant shall be paid for services rendered up to the date Consultant received notice of suspension or termination, less any payments previously made, provided Consultant has supported such payments with detailed factual data containing services performed and hours worked. In the event of suspension or termination, any payments made by the Attorney General for which Consultant has not rendered services shall be refunded. Consultant shall not be entitled to any fee for any collections made or received, or any payment made by the debtor, after termination or non-renewal even if the collection or payment is made pursuant to a payment plan established by Consultant.

D.   In the event this Agreement is terminated prior to its completion, Consultant, upon payment as specified, shall deliver to the Attorney General all work products and documents which have been prepared by Consultant in the course of providing services under this Agreement. All such materials shall become, and remain the property of, the Attorney General, to be used in such manner and for such purpose as the Attorney General may choose. If Consultant is removed from any Account or if this Retention Agreement is terminated or is not renewed upon expiration, then Consultant will timely transfer the work back to the Attorney General and cooperate with the Section Chief of the Revenue Recovery Services Section or his/her designee in effecting this transfer.

E.   Consultant agrees to protect the Attorney General's interests in any transfer of work. Final payment to Consultant may be withheld if Consultant fails to transfer all files, documents, and materials when so requested by the Ohio Attorney General.

F.   Consultant agrees to waive any right to, and shall make no claim for, additional compensation against the Attorney General by reason of such suspension or termination.

G.   Consultant may terminate this Agreement upon thirty (30) days prior written notice to the Attorney General.

## IX.  RECORD KEEPING

A.  During performance of this Agreement and for a period of three years after its completion, Consultant shall maintain auditable records of all charges pertaining to this Agreement and shall make such records available to the Attorney General as the Attorney General may reasonably require.  Consultant is responsible for costs incurred for storing and providing these records.

B.  Consultant shall keep all financial records and other documents related to this Agreement in a manner consistent with generally accepted accounting procedures. All records and related documents shall be filed in a manner so that they are easily accessed and located.

C.  The Attorney General reserves the right to audit the financial and business records that are associated with the Attorney General Accounts and related cash receipts of Consultant to assure that proper reporting and remittance are submitted to the Attorney General. This audit may be performed by the Attorney General, internal audit staff, independent accountants, or the Auditor of the State. The Attorney General is responsible for the cost of such audit unless the audit establishes grounds for termination of the contract. If the audit results in termination, Consultant shall reimburse the cost of the audit.

## X.  RELATED AGREEMENTS

A.  The work contemplated in this Agreement is to be performed by Consultant, who may subcontract without the Attorney General's approval for the purchase of articles, supplies, components, or special mechanical services that do not involve the type of work or services described in Exhibit 1, Scope of Work, but which are required for its satisfactory completion.

1.  At the time of execution of this Agreement, Consultant shall furnish to the Attorney General a list of any subcontractors performing work contemplated in this Agreement, their addresses, tax identification numbers, and the dollar amount of each subcontract.

2.  Consultant shall not enter into other subcontracts related to the work contemplated in this Agreement without prior written approval by the Attorney General.  All work subcontracted shall be at Consultant's expense.

B.  Consultant shall bind its subcontractors to the terms of this Agreement, so far as applicable to the work of the subcontractor, and shall not agree to any provision which seeks to bind the Attorney General to terms inconsistent with, or at variance from, this Agreement.

C.  Consultant warrants that it has not entered into, nor shall it enter into, other agreements, without prior written approval of the Attorney General, to perform substantially identical work for the State of Ohio such that the product contemplated hereunder duplicates the work called for by the other agreements.

## XI.  CONFLICTS OF INTEREST AND ETHICS COMPLIANCE

A.  No personnel of Consultant or member of the governing body of any locality or other public official or employee of any such locality in which, or relating to which, the work under this Agreement is being carried out, and who exercise any functions or responsibilities in connection with the review or approval of this Agreement or carrying out of any such work, shall, prior to the completion of said work, voluntarily acquire any personal interest, direct or indirect, which is

incompatible or in conflict with the discharge and fulfillment of his or her functions and responsibilities with respect to the carrying out of said work.

B.  Any such person who acquires an incompatible or conflicting personal interest, on or after the effective date of this Agreement, or who involuntarily acquires any such incompatible or conflicting personal interest, shall immediately disclose his or her interest to the Attorney General in writing.  Thereafter, he or she shall not participate in any action affecting the work under this Agreement, unless the Attorney General shall determine in its sole discretion that, in the light of the personal interest disclosed, his or her participation in any such action would not be contrary to the public interest.

C.  Consultant represents, warrants, and certifies that it and its employees engaged in the administration or performance of this Agreement are knowledgeable of and understand the Ohio Ethics and Conflicts of Interest laws and Executive Order No. 2007-01S.  Consultant further represents, warrants, and certifies that neither Consultant nor any of its employees will do any act that is inconsistent with such laws and Executive Order.  The Governor's Executive Orders may be found be accessing the following website: http://governor.ohio.gov/GovernorsOffice/ExecutiveOrdersDirectives/tabid/105/Default.aspx.

## XII.   NONDISCRIMINATION OF EMPLOYMENT

A.  Pursuant to O.R.C. Section 125.111 and the Attorney General's policy, Consultant agrees that Consultant, any subcontractor, and any person acting on behalf of Consultant or a subcontractor, shall not discriminate, by reason of race, color, religion, sex, sexual orientation, age, disability, military status, national origin, or ancestry against any citizen of this state in the employment of any person qualified and available to perform the work under this Agreement.

B.  Consultant further agrees that Consultant, any subcontractor, and any person acting on behalf of Consultant or a subcontractor shall not, in any manner, discriminate against, intimidate, or retaliate against any employee hired for the performance of work under this Agreement on account of race, color, religion, sex, sexual orientation, age, disability, military status, national origin, or ancestry.

C.  Consultant represents that it has a written affirmative action program for the employment and effective utilization of economically disadvantaged persons pursuant to R.C. 125.111(B) and has filed an Affirmative Action Program Verification form with the Equal Employment Opportunity and Affirmative Action Unit of the Department of Administrative Services.

## XIII.   RIGHTS IN DATA AND COPYRIGHTS/PUBLIC USE

A.  The Attorney General shall have unrestricted authority to reproduce, distribute and use (in whole or in part) any reports, data or materials prepared by Consultant pursuant to this Agreement.  No such documents or other materials produced (in whole or in part) with funds provided to Consultant by the Attorney General shall be subject to copyright by Consultant in the United States or any other country.

B.  Consultant agrees that all original works created under this Agreement shall be made freely available to the general public to the extent permitted or required by law until and unless specified otherwise by the Attorney General.  Any requests received by Consultant should be referred to the Attorney General.

## XIV.   CONFIDENTIALITY

A.  Consultant shall not discuss or disclose any information or material obtained pursuant to its obligations under this Agreement without the prior written consent of the Attorney General.

B.  All provisions of this Agreement relating to "confidentiality" shall remain binding upon Consultant in the event of cancellation.

C.  The parties agree that neither Consultant, nor any partner, associate, employee, or any other person assisting with this Agreement shall publish any material, including online publications, or speak to or otherwise communicate with any representative of a television station, radio station, newspaper, magazine, website, or any other media outlet concerning the work outlined or contemplated by this Agreement without first obtaining approval of the Section Chief of the Revenue Recovery Services Section and/or the Director of Media Relations of the Attorney General. Consultant shall not speak on behalf of the Ohio Attorney General to any member of the news media.

D.  Consultant shall not state or imply in any manner, including in commercial advertising, that its services are endorsed or preferred by the Attorney General.  The Attorney General may not be used as a reference for Consultant, without the Attorney General's prior approval.

E.  Consultant shall consult with the Section Chief of the Revenue Recovery Services Section before responding to any public records request related to this Agreement. Moreover, Consultant shall not disclose any information obtained in performing its services hereunder in violation of any State or Federal law, including, but not limited to, the Family Educational Rights and Privacy Act ("FERPA") and/or the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") as the same may be amended or modified from time to time.

F.     Consultant shall instruct Consultant's employees to use a high degree of care to keep confidential all information concerning the State of Ohio's client data, its business, its financial affairs, the relations with its citizens and its employees, as well as any other information which may be specifically classified as confidential in writing by the Attorney General.

G.     Consultant shall maintain and file a written policy and enforced practice for the safeguarding of a debtor's identity, including social security numbers, identification number, and other information that could be used to debtor disadvantage with the Section Chief of Revenue Recovery Services Section. The policy shall include secure destruction of data under supervision, and Consultant shall enforce the prohibition of the unauthorized acquisition or retention of information by support staff and personnel, including social security numbers. Consultant must submit a copy of this policy to the Attorney General at the time of contract execution.

## XV.   LIABILITY

A.  Consultant agrees to indemnify and to hold the Attorney General and the State of Ohio harmless and immune from any and all claims for injury or damages arising from this Agreement which are attributable to Consultant's own actions or omissions or those of its trustees, officers, employees, subcontractors, suppliers, third parties utilized by Consultant, or joint venturers while acting under this Agreement.  Such claims shall include any claims made under the Fair Labor Standards Act or under any other federal or state law involving wages, overtime, or employment matters and any claims involving patents, copyrights, and trademarks.

B.   Consultant shall bear all costs associated with defending the Attorney General and the State of Ohio against any claims.

C.   In no event shall either party be liable to the other party for indirect, consequential, incidental, special, or punitive damages, or lost profits.

D.   In conjunction herewith, Consultant agrees, at its own cost, to procure and continue in force at all times that this contract is in effect, in its name, general liability insurance against any and all claims for injuries to persons or damage to property occurring or arising out of Consultant's obligations set forth herein.  Such insurance shall at all times be in an amount not less than Five Hundred Thousand Dollars ($500,000) on account of bodily injury to or death of one (1) person, and One Million Dollars ($1,000,000) on account of bodily injuries or death of more than one person as a result of any one accident or disaster, and Two Hundred Fifty Thousand Dollars ($250,000) for property damage in any one accident.  Such insurance shall be written by a company or companies authorized to engage in the business of general liability insurance in the State of Ohio with an A.M. Best rating of at least "A" or be otherwise approved in writing by the Attorney General.  A certificate reflecting the continuing coverage of all such policies procured by Consultant in compliance herewith shall be delivered to the Attorney General at least thirty (30) days prior to the time such insurance is required to be carried by Consultant, and thereafter at least thirty (30) days prior to the expiration of any policies.  Such insurance shall name the Attorney General and the State of Ohio as additional insureds.  Such policies shall bear an endorsement stating that the insurer agrees to notify the Attorney General not less than thirty (30) days in advance of any proposed modification or cancellation of any such policy.

## XVI.   COMPLIANCE WITH LAWS

A.   Consultant, in the execution of its duties and obligations under this Agreement, agrees to comply with all applicable federal, state and local laws, rules, regulations and ordinances.

B.   Consultant affirms that it has all of the approvals, licenses, or other qualifications needed to conduct business in Ohio and all are current.  If at any time during the contract period Consultant, for any reason, becomes disqualified from conducting business in the State of Ohio, Consultant will immediately notify the Attorney General in writing and will immediately cease performance of contract activities.

C.   Consultant must comply with the same standards of behavior as set forth in the Truth in Lending Act, 15 USC 1601 et seq., the Fair Credit Reporting Act, 15 USC 1681 et seq., and the Fair Debt Collection Practices Act, 15 USC 1692 et seq. as amended and any and all ancillary or collateral laws, regulations, administrative laws that apply to the above.

## XVII.   DRUG FREE WORKPLACE

A.   Consultant agrees to comply with all applicable federal, state and local laws regarding smoke-free and drug-free work places and shall make a good faith effort to ensure that none of its employees or permitted subcontractors engaged in the work being performed hereunder purchase, transfer, use, or possess illegal drugs or alcohol, or abuse prescription drugs in any way.

## XVIII.  CAMPAIGN CONTRIBUTIONS

A.  Consultant hereby certifies that neither Consultant nor any of Consultant's partners, officers, directors, shareholders nor the spouses of any such person have made contributions in excess of the limitations specified in Ohio Rev. Code § 3517.13.

B.  Consultant shall, at all times, have a completed Affidavit of Eligibility, in the form attached as Exhibit C on file with the Attorney General. Consultant should submit this document at the time of contract execution. Failure to provide a completed Affidavit of Eligibility will result in termination of this Agreement.

## XIX.   ENTIRE AGREEMENT/WAIVER

A.  This Agreement incorporates the Request for Qualifications for Delinquent Debt Collection Vendors for Fiscal Year 2010 (the "RFQ") and Consultant's response to the RFQ by reference. This Agreement, including exhibits and documents incorporated by reference, constitutes the entire agreement between the parties hereto and shall not be modified, amended or supplemented, or any rights herein waived, unless specifically agreed upon in writing by the parties hereto. In the event of a conflict between the terms of the body of this Agreement and any exhibits, the body of this Agreement will control.

B.  This Agreement supersedes any and all previous agreements, whether written or oral, between the parties.

C.  A waiver by any party of any breach or default by the other party under this Agreement shall not constitute a continuing waiver by such party of any subsequent act in breach of or in default hereunder.

## XX.    NOTICES

A.  All notices, consents, and communications hereunder shall be given in writing, shall be deemed to be given upon receipt thereof, and shall be accomplished by personal delivery or by United States Certified mail, return receipt requested, postage prepaid, addressed to the other party. All notices, consents and communications hereunder shall be addressed to the Section Chief of Revenue Recovery Services in the Attorney General and mailed to 150 E. Gay St., 21st Floor, Columbus, OH 43215 or such other address as the Attorney General may hereafter designate in writing.

## XXI.   HEADINGS

A.  The headings in this Agreement have been inserted for convenient reference only and shall not be considered in any questions of interpretation or construction of this Agreement.

## XXII.  SEVERABILITY

A.  The provisions of this Agreement are severable and independent, and if any such provision shall be determined to be unenforceable in whole or in part, the remaining provisions and any partially enforceable provision shall, to the extent enforceable in any jurisdiction, nevertheless be binding and enforceable.

## XXIII. CONTROLLING LAW

A.  This Agreement and the rights of the parties hereunder shall be governed, construed, and interpreted in accordance with the laws of the State of Ohio.  Consultant consents to jurisdiction in a court of proper jurisdiction in Franklin County, Ohio.

## XXIV. SUCCESSORS AND ASSIGNS

A.  Neither this Agreement, nor any rights, duties, nor obligations hereunder, may be assigned or transferred in whole or in part by Consultant, without the prior written consent of the Attorney General.

## XXV.  FINDINGS FOR RECOVERY

A.  If the potential compensation to Consultant under this Agreement exceeds $25,000, Consultant warrants that it is not subject to an "unresolved" finding for recovery under O.R.C. Section 9.24.

B.  If this warranty is found to be false, this Agreement is void ab initio and Consultant shall immediately repay to the Attorney General any funds paid under this Agreement.

## XXVI. DEBARMENT

A.  Consultant represents and warrants that it is not debarred from consideration for contract awards by the Director of the Department of Administrative Services, pursuant to either O.R.C. Section 153.02 or O.R.C. Section 125.25.  If this representation and warranty is found to be false, this Agreement is void ab initio and Consultant shall immediately repay to the Attorney General any funds paid under this Agreement.

## XXVII. DECLARATION REGARDING MATERIAL ASSISTANCE/NONASSISTANCE TO A TERRORIST ORGANIZATION

A.  If the potential compensation to Consultant under this Agreement exceeds $100,000, Consultant hereby represents and warrants to the Attorney General that it has not provided any material assistance, as that term is defined in O.R.C. Section 2909.33(C), to any organization identified by, and included on, the United States Department of State Terrorist Exclusion List and that it has truthfully answered "no" to every question on the "Declaration Regarding Material Assistance/Non-assistance to a Terrorist Organization," available at http://homelandsecurity.ohio.gov/dma/dma.asp.  Consultant further represents and warrants that it has provided or will provide such to the Attorney General prior to execution of this Agreement.

B.  If these representations and warranties are found to be false, this Agreement is void ab initio and Consultant shall immediately repay to the Attorney General any funds paid under this Agreement.

## XXVIII.   ANTITRUST ASSIGNMENT

A.  Consultant assigns to the Attorney General all State and Federal antitrust claims and causes of action that relate to all goods and services provided for in this Agreement.

## XXIX. EXECUTION

A.   This Agreement is not binding upon the Attorney General unless executed in full, and is effective as of date of signature by the Attorney General.

[Remainder of Page Intentionally Left Blank]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized officers.

**CONSULTANT**
**UNITED COLLECTION BUREAU, INC.**
**5620 Southwyck Boulevard**
**Toledo, OH  43614**


By:_____

Name: Jeff Horner_____

Title: V.P. Government Services Div.

Date: Sept. 27, 2009_____

**OHIO ATTORNEY GENERAL**

By:_____

Sue Hamilton
Chief of Operations, Administration

Date:_____09.30.09_____

By:_____

Darla Reardon
Chief, Revenue Recovery Section

Date: 9 l 30 / 09_____

*Approval as to form:*

By:_____

Name: Amy Minardo_____

Title: Chief, Business Counsel Section

Date: 9|30|09_____

**EXHIBIT A**
**Scope of Work**

1.  Consultant will provide collection services on assigned Accounts as directed by Attorney General and as described in Consultant's response to the RFQ.

2.  Consultant may establish a payment plan with a debtor, so long as the payment plan complies with Attorney General policies and procedures. No payment plan established by Consultant shall exceed five years in length without prior written approval of the Attorney General's Director of In-House Collections.

3.  The Consultant shall be responsible for printing and mailing all letters generated during the collection process. All correspondence must have the approval of the Attorney General. The Consultant shall update the Attorney General's collections system as to all collection activity.

4.  Consultant will comply with all reporting requests and procedures established Attorney General.

5.  Consultant must have and maintain in good working order the type of equipment necessary for electronic information storage and maintain security on this equipment, firewalls and security processes as required by the Attorney General for the duration of the contract, including any required upgrades. Consultant must maintain the ability to transmit and receive electronic files and reporting and utilize standard file formats as determined by the Attorney General.

6.  At its own expense, Consultant shall provide all necessary computer equipment, and licensing fees including but not limited to CUBS software, scanners, terminals, printers, workstations, communication equipment, and telephone circuits needed to perform the services required by the Attorney General under this contract and be responsible for all licensing fees, other software costs, and other expenses related to the requirements of the Attorney General for the duration of the contract.

7.  The Attorney General will provide adequate ports to allow access to its computer collection system. The Contractor will identify by named user how many ports are necessary to perform the terms, conditions and requirements of the contract.

8.  Consultant must own the following equipment and software for the duration of the contract:

    i.    Pentium Dual Core 2.8 GHz Processor or above;
    ii.   1GB RAM. When running more applications simultaneously, in addition to the Windows operating system and RPCS, more memory may be required;
    iii.  CD-ROM drive - 1000 MB Ethernet Network Interface;
    iv.   Windows compatible mouse, keyboard and monitor;
    v.    TCP/IP Network Protocol; and
    vi.   Microsoft Windows 2000, 2003 or XP CU•EMULATE 3.0 from RevQ (v2.4i or higher acceptable).

9.  Consultant agrees to abide by all policies and procedures promulgated by the Attorney General relating to collection of claims.

10. Consultant agrees to provide the Attorney General with immediate access to all documents, papers, records, computer searches involving the services to be performed, upon request.

11. Consultant shall maintain a written policy regarding customer service for its staff and personnel and file a copy of the policy with the Section Chief of the Revenue Recovery Services Section at the time of contract execution. Consultant must also submit any updates to this policy throughout the contract term.

12. Consultant shall provide an annual training session for all of Consultant's staff regarding customer service practices and any updated information regarding policy and procedures for the Accounts assigned by Attorney General.  Consultant shall notify Attorney General in writing after training session has been completed.

**EXHIBIT B**

## ASSOCIATION CODE OF ETHICS AND PROFESSIONAL RESPONSIBILITY

As amended October 8, 2004

### RULE 1.          CONDITIONS OF MEMBERSHIP

Upon becoming a Member of the American Collectors Association, Inc., ("Association") and as a condition of membership renewal, each member of this Association agrees to the following rules composed of the Association Code of Operations, the Association Code of Ethics and Professional Responsibility and the Association Procedural Rules for the Ethics and Professional Responsibility Committee.

### RULE 2.          PROFESSIONAL MISCONDUCT

It shall be deemed professional misconduct for a Member;
**2.01** to knowingly violate the United States Fair Debt Collection Practices Act with reckless disregard for its provisions;
**2.02** to knowingly violate any federal or state law pertaining to collection and credit industry practices and procedures, with reckless disregard for its provisions;
**2.03** to have been convicted of any crime that directly relates to credit or collection industry practices or procedures;
**2.04** to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation including misrepresentation for the purpose of obtaining a license, certificate, or business-related insurance;
**2.05** to harass a person on the basis of race, sex, age, creed, religion, color, national origin, disability, sexual preference or marital status in connection with a Member's professional business, Association activities, or while acting in a representative capacity of Association;
**2.06** to engage in dishonorable, unethical, or unprofessional conduct of a character likely to deceive, defraud, or harm the public;
**2.07** to knowingly misrepresent an institution or organization with which the Member is affiliated or conversely, to knowingly represent that it is affiliated with an institution or organization when such an affiliation does in fact not exist. However, this provision does not preclude a Member from:
**2.07(a)** using their Association titles at any time, in any activity, directly related to Association, Association Enterprises, Inc., and/or Collectors Insurance Agency, Inc.,
**2.07(b)** using their titles in connection with activities not related to Association, the Association for-profit arm, or Collectors Insurance Agency, Inc., when such activities constitute a community service effort or a public relations effort likely to benefit the credit/collection industry.
**2.07(c)** using their Association titles or designations in any situation or manner that does not otherwise create the impression or otherwise tend to lead someone to believe that a product is endorsed by Association or was created by Association, its affiliates, or subsidiaries;
**2.07(d)** developing, selling or promotion competitive products, so long as the Member's Association title or designation is not used in connection with the development, sale or promotion of such products.

### RULE 3.          ETHICAL CONDUCT AND PROFESSIONAL RESPONSIBILITY EXPECTATIONS OR MEMBERS

It shall be deemed to be the ethical and professional responsibility of each Member; 3.01 to make reasonable efforts to ensure that the Member personally, as well as all of Member's personal, are

familiar with the laws under which the collection business is conducted, the Association Code of Ethics and Professional Responsibility, the Procedural Rules for the Association Ethics Committee, and the Association Code of Operations, and that they comply with these laws, rules, and regulations to the best of their abilities;

**3.02** to take adequate precautions to distinguish between his or her professional views and the views of Association, its subsidiaries, and affiliates when communicating to third parties, including, but not limited to, the Member's employees, personal, students, creditor-clients, non-Member collection agencies, and political representatives;

**3.03** not to communicate, share, or distribute any information which the member acquires in the course of performing his or her duties as an Association Member, officer, director, committee Member, or instructor which could have a detrimental impact upon the business or reputation of any other Member of Association, its affiliates, or subsidiaries, nor shall any Member use any information described herein to promote his or her self-interest or business interest.

## RULE 4.      AMENDMENTS

The foregoing may be amended or altered in whole or in part by a majority vote of the Association Ethics and Professional Responsibility Committee. Any such amendments are then subject to final approval of the Association Executive Committee. Notification of approved changes shall be sent promptly to the Association Membership using the most appropriate communications medium(s).

**EXHIBIT C**
**AFFIDAVIT OF ELIGIBILITY FOR CONTRACTOR**
**APPOINTMENT**

STATE OF  Ohio            :

COUNTY OF  Lucas         : SS.

The undersigned, being first duly sworn, deposes and says as follows:

      1.  Contractor makes this affidavit to certify its eligibility to enter into this Agreement.

      2.  Contractor hereby certifies that Contractor is not disqualified under R.C. 3517.13 from being awarded a contract by Ohio Attorney General Richard Cordray.

3.  Contractor hereby certifies that all applicable parties listed in R.C. 3517.13 are in full compliance with the requirements of that provision.

4.  Contractor recognizes that any contract awarded in violation of R.C. 3517.13 may be rescinded and that three times any amount contributed in violation of R.C. 3517 may be recoverable by the State of Ohio.

5.  Contractor further recognizes that, pursuant to R.C. 3517.992(R)(3), knowingly making a false statement on this certification is a fifth degree felony.


_Jeff Horner_

_____
SIGNATURE

Jeff Horner_____
PRINTED NAME

United Collection Bureau, Inc._____
ORGANIZATION NAME

Sept. 27, 2009_____
DATE

**EXHIBIT D**


**UNITED STATES POSTAL SERVICE**®

Home | Help | Sign in

Track & Confirm          FAQs

# Track & Confirm

## Search Results

Label/Receipt Number: **RR74 3610 462U S**
Expected Delivery Date: **January 3, 2011**
Class: **First-Class Mail**®
Service(s): **Registered Mail**™
Status: **Delivered**

Your item was delivered at 1:06 pm on January 10, 2011 in COLUMBUS, OH 43220.

Information on this item has been restored from offline files and will be available online for 30 days from 01/10/2012.

Detailed Results:

• **Delivered, January 10, 2011, 1:06 pm, COLUMBUS, OH 43220**
• **Acceptance, December 31, 2010, 12:59 pm, SAINT JOHNS, AZ 85936**

Track & Confirm

Enter Label/Receipt Number.

( Go > )

---

Site Map     Customer Service     Forms     Gov't Services     Careers     Privacy Policy     Terms of Use     Business Customer Gateway

Copyright© 2010 USPS. All Rights Reserved.     No FEAR Act EEO Data     FOIA

**EXHIBIT E**



**United Collection Bureau, Inc.**

PO Box 165009
Columbus, OH 43216-5009

Telephone: (614) 447-2730
           (800) 320-7199
Facsimile: (614) 263-7450

Virgil K Stimer
C/o Track Products
PO Box 1608
Saint Johns AZ 85936-1608

| | |
|---|---|
| Date: | January 15, 2011 |
| Account No: | 8522235 |
| Taxpayer ID: | XXX-XX-9694 |
| CRN No: | 02200915513693 |
| Amount Due: | $12,014.78 (see enclosure for detail) |

Your delinquent tax account is now being handled by United Collection Bureau, Inc., an authorized representative of the Ohio Attorney General.

To avoid further collection activity, immediately send payment in full in the form of a **certified check, official bank check, or money order**, payable to Ohio Treasurer of State and mail to Office of the Attorney General in the enclosed envelope. Write your account number on the payment to ensure proper handling.

**Payments may also be made via the Internet at**
**http://www.ag.state.oh.us/business/pay.asp**
**or https://ohag.govconnect.com**

If you have any questions about your account, call 1-800-320-7199.

This is an attempt to collect a debt by UCB, Inc., a debt collector, and any information obtained will be used for that purpose.

Sincerely,

*Vickie Thompson*

Manager
United Collection Bureau, Inc.

Attachment

**SEE REVERSE SIDE FOR IMPORTANT INFORMATION**

44RQ075U01UCBLT50

**PLEASE RETURN THIS PORTION WITH PAYMENT. DO NOT ATTACH CHECK TO STUB.**
**PLEASE INCLUDE YOUR ACCOUNT NUMBER ON THE FRONT OF YOUR PAYMENT.**

| | |
|---|---|
| Account No: | 8522235 |
| Taxpayer ID: | XXX-XX-9694 |
| CRN No: | 02200915513693 |
| Amount Due: | $12,014.78 (see enclosure for detail) |

STATE OF OHIO
OFFICE OF THE ATTORNEY GENERAL
PO BOX 165009
COLUMBUS OH 43216-5009
ADDRESS SERVICE REQUESTED

☐ Please check box if address shown is incorrect or has changed, and indicate change(s) on reverse side.

8522235-UCBLT50    464808078

Virgil K Stimer
C/o Track Products
PO Box 1608
Saint Johns AZ 85936-1608

━━━━━ **REMIT TO:** ━━━━━

State of Ohio Office of the Attorney General
**Payable to: Ohio Treasurer of State**
PO Box 165009
Columbus OH 43216-5009

**CALIFORNIA:**  As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit-reporting agency if you fail to fulfill the terms of your credit obligations.

**COLORADO:** FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE www.coloradoattorneygeneral.gov/ca.

**IDAHO:** Toll Free 800-866-6228.

**MAINE:**  Hours of Operation (EST): Monday through Thursday, 8:00 a.m. to 8:00 p.m.; Friday 8:00 a.m. to 5:00 p.m.; Saturday 8:00 a.m. to 12:00 p.m.

**MASSACHUSETTS: \*\*NOTICE OF IMPORTANT RIGHTS\*\***  You have the right to make a written or oral request that telephone calls regarding your debt not be made to you at your place of employment. Any such oral request will be valid for only ten days unless you provide written confirmation of the request postmarked or delivered within seven days of such request. You may terminate this request by writing to the debt collector.  Hours of Operation (EST): Monday through Thursday, 8:00 a.m. to 8:00 p.m.; Friday 8:00 a.m. to 5:00 p.m.; Saturday 8:00 a.m. to 12:00 p.m.

**MINNESOTA:**  This collection agency is licensed by the Minnesota Department of Commerce.

**NEW YORK CITY:**  New York City Department of Consumer Affairs License Number 1004887

**NORTH CAROLINA:**  North Carolina Permit Numbers: 3422, 3843 and 4022

**TENNESSEE:**  This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance.

**UTAH:**  As required by Utah law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit-reporting agency if you fail to fulfill the terms of your credit obligations.

**WISCONSIN:**  This collection agency is licensed by the Division of Banking, P.O. Box 7876, Madison, Wisconsin 53707.

**IF ANY OF THE FOLLOWING HAS CHANGED, PLEASE INDICATE BELOW.**

Your Name _____        Marital Status _____

Street _____        Home Phone _____

City _____        State _____        Zip _____

Employer _____        Business Phone _____

Employer Address _____

ATTACHMENT TO UCBLT50    TAX INFORMATION    01-12-2011


TAXPAYER ID#    XXX-XX-9694

AG ACCOUNT# ASSESSMENT#                    BALANCE  ASSESSMENT PERIOD

8522235      02200915513693            5,018.00  2004
8522234      02200915513692            6,996.78  2005
TOTAL AMOUNT DUE:                     12,014.78

**EXHIBIT F**

 **UNITED STATES POSTAL SERVICE®**

Home | Help | Sign In

Track & Confirm          FAQs

# Track & Confirm

## Search Results

Label/Receipt Number: RR74 3610 459U S
Expected Delivery Date: **January 28, 2011**
Class: **First-Class Mail®**
Service(s): **Registered Mail™**
Status: **Delivered**

Your item was delivered at 11:14 am on January 31, 2011 in COLUMBUS, OH 43220.

Information on this item has been restored from offline files and will be available online for 30 days from 01/10/2012.

Detailed Results:

- **Delivered, January 31, 2011, 11:14 am, COLUMBUS, OH 43220**
- **Arrival at Unit, January 31, 2011, 8:30 am, COLUMBUS, OH 43220**
- **Acceptance, January 25, 2011, 12:26 pm, SAINT JOHNS, AZ 85936**

Track & Confirm

Enter Label/Receipt Number.

( Go > )

Site Map     Customer Service     Forms     Gov't Services     Careers     Privacy Policy     Terms of Use     Business Customer Gateway

Copyright© 2010 USPS. All Rights Reserved.     No FEAR Act EEO Data     FOIA

**EXHIBIT G**



UNITED STATES
POSTAL SERVICE®

Home | Help | Sign In

Track & Confirm          FAQs

# Track & Confirm

## Search Results

Label/Receipt Number: RR74 3610 493U S
Class: **First-Class Mail**®
Status: **Delivered**

Your item was delivered at 10:51 am on February 23, 2011 in
COLUMBUS, OH 43220. A proof of delivery record may be available
through your local Post Office for a fee.

Additional information is stored in files offline.

A request to restore this information has been submitted and is currently
pending.

Track & Confirm

Enter Label/Receipt Number.

( Go > )

Site Map    Customer Service    Forms    Gov't Services    Careers    Privacy Policy    Terms of Use    Business Customer Gateway

**Copyright© 2010 USPS. All Rights Reserved.**    No FEAR Act EEO Data    FOIA

**EXHIBIT H**

STATE OF OHIO
OFFICE OF THE ATTORNEY GENERAL
PO BOX 165009
COLUMBUS OH 43216-5009
ADDRESS SERVICE REQUESTED

8522235-UCBLT40        4447038667
Virgil K Stimer
C/o Track Products
PO Box 1607
Saint Johns AZ 85936-1607

Rec 1-15-11   0011011300-

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE PAID
DSI-48398

**EXHIBIT I**

# NOTARY CERTIFICATE OF SERVICE

## AND

## VERIFICATION AND CERTIFICATION OF DEFAULT

**In Regard to SWORN NOTICE AND AFFIDAVIT FORM VKS-UCB-12272010,**

I, the undersigned notary public, hereby verify and certify that on **the 31st day of December, 2010,** I mailed a document styled **SWORN NOTICE AND AFFIDAVIT FORM VKS-UCB-12272010** by United States Postal Service registered mail **RR 743 610 462 US** to Vickie Thompson, Manager, United Collection Bureau Inc., 4100 Horizons Dr. # 101   Columbus, OH 43220-5283.

I verify and certify that I did not receive a response to the document styled, **SWORN NOTICE AND AFFIDAVIT FORM VKS-UCB-12272010** from any person from United Collection Bureau, Inc.  A certified copy of the said **SWORN NOTICE AND AFFIDAVIT FORM VKS-UCB-12272010,** bearing my notary seal, is enclosed with or attached to this document.

**In Regard to NOTICE OF FAULT AND DISHONOR UCBLT50, (Opportunity to Cure)**

I, the undersigned notary public, hereby verify and certify that on the **25th day of January, 2011,** I mailed a document styled **NOTICE OF FAULT AND DISHONOR UCBLT50, (Opportunity to Cure)** by United States Postal Service registered mail **RR 743 610 459 US** to Vickie Thompson, Manager, United Collection Bureau Inc., 4100 Horizons Dr. # 101   Columbus, OH 43220-5283.

I verify and certify that I did not receive a response to the document styled, **NOTICE OF FAULT AND DISHONOR UCBLT50, (Opportunity to Cure)** from any person from United Collection Bureau, Inc.  A certified copy of the said **NOTICE OF FAULT AND DISHONOR UCBLT50, (Opportunity to Cure),** bearing my notary seal, is enclosed with or attached to this document.

**In Regard to NOTICE OF DEFAULT IN DISHONOR CONSENT TO JUDGMENT UCB**

I, the undersigned notary public, hereby verify and certify that on the **17th day of February, 2011,** I mailed a document styled **NOTICE OF DEFAULT IN DISHONOR CONSENT TO JUDGMENT UCB** by United States

Postal Service registered mail **RR 743 610 493 US**  to Vickie Thompson, Manager, United Collection Bureau Inc., 4100 Horizons Dr. # 101  Columbus, OH 43220-5283.

I verify and certify that I did not receive a response to the **NOTICE OF DEFAULT IN DISHONOR CONSENT TO JUDGMENT UCB** from any person from United Collection Bureau, Inc.  A certified copy of the said **NOTICE OF DEFAULT IN DISHONOR CONSENT TO JUDGMENT UCB,** bearing my notary seal, is enclosed with or attached to this document.

State of Arizona, County of Apache,

I, _____*Jack Mechem*_____ a notary public for the state of Arizona certify and verify that the above is true and correct and that I did mail the documents above.

(seal)



Notary Public                          Date 2-22-11

My Commission Expires *July 14, 2013*